UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRISTAL SHERWOOD, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>CHATTEM. INC,<br><br>      Defendant. | Civil Action No.: _____<br><br>**COMPLAINT** |

Plaintiff Cristal Sherwood, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against defendant Chattem, Inc. ("Defendant," or "Chattem"), as follows:

## NATURE OF THE ACTION

1. This action seeks to redress Defendant's false and misleading marketing claim that its Cortizone-10® line of 1% hydrocortisone topical creams, ointments, gels, lotions and liquid are "Maximum Strength" (the "Cortizone-10 Product(s)") when, in fact, topical hydrocortisone products are available to consumers at higher strengths.

2. Hydrocortisone is a corticosteroid. Hydrocortisone creams are a medicated lotion, ointment or solution that can treat skin irritations, inflammation or rashes caused by, for example, eczema, psoriasis, poison ivy and insect bites. Such hydrocortisone creams can reduce swelling, redness, and itching by decreasing inflammation in the skin.[1]

3. Topical hydrocortisone products available to consumers in the United States range from 0.01% to 3% hydrocortisone as Defendant itself admits on its own web site. Topical

---

[1] https://my.clevelandclinic.org/health/drugs/18748-hydrocortisone-cream-lotion-ointment-or-solution; https://www.cortizone10.com/en-us/products/creams/sensitive-skin-anti-itch-cream

1

hydrocortisone products containing up to 1% hydrocortisone may be purchased over-the-counter and products with *higher* strengths may be purchased with a prescription.[2] In addition, there are many other topical steroid medications of various formulations and strengths available to consumers with a prescription that are more potent than 1% hydrocortisone products.[3]

4.      Defendant's Cortizone-10 Products contain 1% hydrocortisone (the only active ingredient) and therefore do not contain, as Defendant falsely and misleadingly touts on its product packaging, the "Maximum Strength" of hydrocortisone available to consumers.

5.      Defendant sells its Cortizone-10 Products as "Maximum Strength" under false pretenses to unsuspecting consumers. Defendant's packaging for its Cortizone-10 Products leads consumers reasonably to believe that Cortizone-10 Products contain the maximum amount of hydrocortisone available in topical form when there are stronger topical hydrocortisone products available to consumers by prescription.

6.      Defendant admits on its own website where it describes, but does not sell, its products that its Cortizone-10 Products are not truly "Maximum Strength." Defendant states at the bottom of each page of its website (which consumers are hardly apt to read since Cortizone-10 Products are sold in stores and on retailer websites) what it deliberately omits from the Cortizone-10 Product packaging that consumers actually see when making a purchase, namely, that Cortizone-10 Products are not simply the "Maximum Strength" of hydrocortisone available

---

[2]     https://www.cortizone10.com/en-us/all-about-itch/powered-by-hydrocortisone (Defendant's web site states that "Corticosteroid products contain anywhere from 0.01% to 3% hydrocortisone. The maximum strength available without a prescription is 1%." and cites AOCD.org, editors. STEROIDS (TOPICAL). American Osteopatheic College of Dermatology. 2021).

[3]     https://www.psoriasis.org/potency-chart/ (National Psoriasis Foundation chart of topical steroids classified by their potency) and https://www.verywellhealth.com/steroids-topical-steroid-strengths-1068832 (discussing Class I (strongest) to Class VII (weakest) topical steroids, and showing 0.5% to 1% hydrocortisone with the least potency or strength).

to consumers, but instead are the "**maximum strength of hydrocortisone <u>available without a prescription</u>.**"[4] (Emphasis added).

7.      Similarly, Defendant has also run commercials on television and/or the internet in which the voice-over narrator very briefly describes Cortizone-10 Products as "maximum strength itch relief <u>without a prescription</u>,"[5] but Defendant does not include that clarification on the Cortizone-10 Product packaging.

8.      In proposed class actions asserting claims that are analogous to those asserted in this complaint, U.S. District Judges in New York, Illinois, and California have sustained claims that lidocaine patches with 4% lidocaine labeled as "Maximum Strength" mislead consumers because stronger lidocaine patches are available by prescription and therefore the 4% lidocaine patches do not provide the maximum strength of lidocaine available in patch form. *See. e.g.*, *Ary v. Target Corp.*, Case No. 22-cv-02625-HSG, 2023 U.S. Dist. LEXIS 49633*4-7 (N.D. Cal. March 23, 2023) (plaintiff sufficiently pled claims under California consumer protection laws because "a reasonable consumer would be misled by the labels" on Target's lidocaine patches that the product was "Maximum Strength"); *Acosta-Aguayo v. Walgreen Co.*, Case No. 22-cv-00177, 2023 U.S. Dist. LEXIS 34836*10-14 (N.D. Ill. March 2, 2023) (plaintiffs sufficiently pled a claim for consumer deception under Illinois and California consumer protection statutes because "[r]eading the phrase 'Maximum Strength' to mean the maximum strength of lidocaine available generally [including by prescription] is not an 'unreasonable or fanciful

---

[4]     https://www.cortizone10.com/en-us/all-about-itch/powered-by-hydrocortisone (Defendant makes similar additional statements on its *website* regarding what is meant by "maximum strength" that it does not tell consumers on its *product packaging*, namely "[l]earn about the key ingredient that makes Cortizone-10® the maximum-strength itch relief available over the counter;" "Cortizone-10 brings you the maximum-strength hydrocortisone available over the counter;" and "Cortizone-10 products contain the maximum-strength anti-itch medicine available over the counter, without a prescription."

[5]     https://www.youtube.com/watch?v=Vv8HL4XeTz8

3

interpretation[]' of the Product's label"); *Stevens v. Walgreen Co.*, 21-CV-10603 (JPO), 2022 U.S. Dist. LEXIS 152744*13-14 (S.D.N.Y. August 24, 2022) (sustaining claims under New York General Business Law §§ 349 and 350 for misleading consumers with "Maximum Strength" lidocaine product under similar reasoning); *Hrapoff v. Hisamitsu Am., Inc.*, No. 21-CV-01943-JST, 2022 U.S. Dist. LEXIS 107721 (N.D. Cal. June 16, 2022) (sustaining claims under New York's General Business Law §§ 349 and 350, California and Illinois consumer protection statutes and for fraud for misleading consumers with "Maximum Strength" lidocaine product under similar reasoning).

9. Judge J. Paul Oetken of this District has denied a motion to dismiss New York General Business Law § 349 and § 350 claims, like those asserted here, against Walgreens and Walmart for selling lidocaine patches labeled as "Maximum Strength" because "it is plausible that a reasonable consumer would understand the patches to contain and deliver the maximum amount of lidocaine available in patch form, and the complaint raises the plausible inference that that is not the case, because there are prescription-strength lidocaine patches that contain 5% lidocaine." *Stevens*, 2022 U.S. Dist. LEXIS 152744*13. *See also Rodriguez v. Walmart Inc.*, 22-CV-2991 (JPO), 2023 U.S. Dist. LEXIS 53253*10-12 (S.D.N.Y. March 28, 2023) (denying a motion to dismiss New York General Business Law §§ 349 and 350 claims against Walmart for its sale of "Maximum Strength" lidocaine patches with 4% lidocaine when stronger products were available with a prescription). In the *Stevens* case, Judge Oetken specifically rejected Walgreen's argument that "prescription-strength patches are not proper comparators" because "such fact-intensive disputes are not appropriate for resolution at this time." Id. *13-14.

10. On April 25, 2023, the CVS pharmacy chain agreed to pay $3.8 million to settle a federal class action in the U.S. District Court for the Eastern District of New York that asserted

claims similar to this action. In that action the plaintiffs claimed, among other things, that CVS' 4% lidocaine products labeled as "Maximum Strength" misled consumers because stronger lidocaine products are available with a prescription. As part of the settlement, CVS also agreed to "change the product labels to clarify that 'maximum strength' refers to lidocaine available over the counter [*i.e.*, without a prescription]." *See Monique Bell et al. v. CVS Pharmacy Inc., 1:21-CV-06850*. [6].

11. Consumers, like Plaintiff, who purchased Defendant's "Maximum Strength" Cortizone-10 Products have been similarly deceived and are also entitled to redress through this action for Defendant's deceptive conduct.

## THE PARTIES

12. Plaintiff Cristal Sherwood is an individual who resides in Orange County, New York.

13. Defendant Chattem, Inc., d/b/a Sanofi Consumer Healthcare, is a Tennessee corporation with a principal place of business in Bridgewater, New Jersey, specifically 55 Corporate Drive, Bridgewater, New Jersey 08807-1265. Defendant is the U.S. Consumer Health Care Division, and a wholly-owned subsidiary, of Sanofi S.A., a French multinational pharmaceutical and healthcare company headquartered in Paris, France.

14. Defendant markets, sells, and distributes various over-the-counter consumer healthcare products, including well-known consumer brands such as Allegra, Aspercreme, Dulcolax, Gold Bond, and Icy Hot, to consumers throughout the United States and New York.

---

[6] https://plus.lexis.com/document/?pdmfid=1530671&crid=5102f217-0a9c-4d20-8e76-916f55db193a&pddocfullpath=%2Fshared%2Fdocument%2Flegalnews%2Furn%3AcontentItem%3A683C-CTJ1-DXPM-S0XY-00000-00&pdcontentcomponentid=122080&pdteaserkey=&pdislpamode=false&pdworkfolderlocatorid=NOT_SAVED_IN_WORKFOLDER&ecomp=974k&earg=sr1&prid=d9fb4062-e868-4739-8991-3d6745dbb2e7#

5

15. Cortizone-10 is one of Defendant's leading brands. It is also one of the top-selling topical hydrocortisone products in the United States with more than $100 million in annual sales.[7]

16. Defendant markets, sells, and distributes its Cortizone-10 Products through mass retailers in the United States and New York, including, but not limited to, CVS, Rite Aid, Target, Walmart, and Walgreens (both brick-and-mortar stores and websites), and other online retailers such as Amazon.[8] Defendant is responsible for the marketing, advertising, trade dress, labeling and packaging of the Cortizone-10 Products.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

18. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

19. This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and

---

[7] https://www.statista.com/statistics/441656/dollar-sales-of-the-leading-anti-itch-product-brand-us/ (2019 statistics for anti-itch product sales in the United States).

[8] https://www.cortizone10.com/en-us/where-to-buy

because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

21. New York law governs the state law claims asserted herein by Plaintiff and the New York class she seeks to represent.

22. New York has a substantial interest in protecting the rights and interests of New York residents against wrongdoing by companies that market and distribute their products within the State of New York.

## FACTUAL BACKGROUND

### I. Defendant's False and Misleading Claim That Cortizone-10 Products Provide "Maximum Strength" Hydrocortisone When They Do Not.

23. Defendant markets and sells a variety of Cortizone-10 Products in assorted sizes (usually one or two ounces), different containers (squeezable tubes and liquid applicators) and different forms for topical application (creams, ointments, gels, lotions, and liquid). Those products include, for example, (a) Maximum Strength Cortizone-10 Hydrocortisone Creme, (b) Maximum Strength Cortizone-10 Hydrocortisone Creme with Aloe, (c) Maximum Strength Cortizone-10 Hydrocortisone Creme Intensive Healing Formula, (d) Maximum Strength Cortizone-10 Hydrocortisone Ointment, (e) Maximum Strength Cortizone-10 Hydrocortisone Cooling Relief Gel, and (f) Maximum Strength Cortizone-10 Massaging Rollerball Hydrocortisone Liquid.

24. All of the Cortizone-10 Products contain 1% hydrocortisone as the sole active ingredient with inactive ingredients varying to some extent between the different products.

25. All of Defendant's Cortizone-10 Products state prominently on the front of the packaging that they are "Maximum Strength." The "Maximum Strength" legend is set-off in a

bright yellow color and in all capitals, ensuring it is prominently visible on the front panel of the product's packaging.

26. The following is an example of the packaging for Defendant's Maximum Strength Cortizone-10 Hydrocortisone Creme that is sold through retailers in New York and the United States:



27. As set forth in paragraphs 1 to 11 above, the packaging of Defendant's Cortizone-10 Products falsely and misleadingly conveys to consumers that the products are "Maximum

8

Strength" (*i.e.*, that they contain the maximum strength of hydrocortisone available to consumers) when they do not, and when Defendant knows, but omits from its packaging, that its Cortizone-10 Products only contain the maximum strength of hydrocortisone available without a prescription.

28.     Defendant does not disclose to consumers on the packaging of its "Maximum Strength" Cortizone-10 Products that its products do not contain the maximum strength of topical hydrocortisone available, and that products with greater strength of hydrocortisone are available to consumers with a prescription.

## II.     Plaintiff Purchased the Cortizone-10 Products That Are Misrepresented as "Maximum Strength."

29.     In or about March 2023, Plaintiff purchased Cortizone-10 Maximum Strength Hydrocortisone Creme from Target in Newburgh, New York.

30.     Prior to purchasing the Cortizone-10 Products, Plaintiff saw that they were labeled as "Maximum Strength" and contain hydrocortisone for skin irritations and inflammation.

31.     Plaintiff purchased the Cortizone-10 Products believing Defendant's statement that its Cortizone-10 Products contained the maximum strength of hydrocortisone available in topical form and because Defendant did not disclose that its Cortizone-10 Products contain merely the maximum strength of hydrocortisone available without a prescription.

32.     Had Plaintiff known that Defendant's Cortizone-10 Products did not contain the maximum amount of hydrocortisone available in topical form she would not have purchased Defendant's products or, at the very least, would not have paid the price premium of $7.99 for two ounces (*i.e.*, $4.00 per ounce) charged for the Defendant's products compared to cheaper

9

topical hydrocortisone products, including cheaper products that do not falsely and misleadingly claim to be "Maximum Strength."

33. The price premium that consumers pay for Defendant's Cortizone-10 Products compared to other topical products containing 1% hydrocortisone as the active ingredient is substantial. For example, Maximum Strength Cortizone-10 Hydrocortisone Creme generally sells for approximately $4 to $5 per ounce whereas 1% hydrocortisone topical products, including products that, unlike Defendant's Cortizone-10 Products, do not falsely and misleadingly claim that they are "Maximum Strength, can be purchased by consumers for as low as $1.74 per ounce.

34. The following are examples of lower-priced 1% hydrocortisone topical products that can be purchased by consumers and that do not, unlike Cortizone-10, falsely and misleadingly claim to be maximum strength on their packaging:

   a. MedPride's Hydrocortisone Cream 1% that can be purchased for $6.99 for four ounces or $1.75 per ounce;

   b. Mericon Industries, Inc.'s Hydrocortisone 1% Lotion that can be purchased for $6.94 for four ounces or $1.74 per ounce; and

   c. Dynarex's Hydrocortisone Cream 1% that can be purchased for $1.87 per ounce.

## CLASS DEFINITION AND ALLEGATIONS

35. Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) Cortizone-10 Products – manufactured, marketed, distributed and/or sold by Defendant which Defendant warranted is "Maximum Strength" (the "Class Products"). Excluded from the

        class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Class Products for resale.

36. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

37. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

38. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.
- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.
- Whether Defendant labeled, packaged, advertised, marketed, and/or sold each Class Product with claims that it was "Maximum Strength."
- Whether Defendant's labeling, packaging, advertising, marketing, and/or selling of each Class Product with claims that it was "Maximum Strength" was and/or is false, fraudulent, deceptive, and/or misleading.

39. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's blatant misrepresentations of material information. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

11

40. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased a Class Product, and she was harmed by Defendant's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased Class Products. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

41. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

42. Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

## As and for a First Cause of Action
### (Violation of New York General Business Law Section 349)

43. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 42 as if fully set forth herein.

44. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.

45. By labeling, packaging, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members with false claims that the products are "Maximum Strength," Defendant engaged in, and continues to engage in, deceptive acts and practices because the Class Products did not contain the "Maximum Strength" of hydrocortisone available to consumers.

46. In taking these actions, Defendant failed to disclose material information about its products, which omissions were misleading in a material respect to consumers and resulted in the purchase of Defendant's products.

47. Defendant has deceptively labeled, packaged, advertised, marketed, promoted, distributed, and sold the Class Products to consumers.

48. Defendant's conduct was consumer oriented.

49. Defendant engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

50. Defendant's misrepresentations were misleading in a material respect because the Class Products did not contain the "Maximum Strength" of hydrocortisone available to consumers.

51. Defendant knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing Class Products.

52. Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for a product that is not what Defendant represents it to be.

53. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

54. Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

### As and for a Second Cause of Action
### (Violation of New York General Business Law Section 350)

55. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 54 as if fully set forth herein.

56. Defendant's labeling, packaging, marketing, and advertising of the Class Products is "misleading in a material respect," as it fails to disclose to consumers material information in Defendant's sole possession and, thus, is "false advertising."

57. No rational individual would purchase the Class Products at the prices at which they are sold in full knowledge that the Class Products do not contain the "Maximum Strength" of hydrocortisone available to consumers.

58. Defendant's labeling, packaging, marketing, and advertising of the Class Products as being "Maximum Strength" were consumer oriented.

59. Defendant's labeling, packaging, advertisements and marketing of the Class Products as being "Maximum Strength" were misleading in a material respect.

60. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by paying for a product that has diminished, lesser or no value due to its false claims that the Class Products were "Maximum Strength."

61. Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.     On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.     On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.     On Plaintiff's First and Second Causes of Action, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.     Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:    May 12, 2023
          White Plains, New York

>                     **DENLEA & CARTON LLP**
>
>               By:   */s/ Steven R. Schoenfeld*
>                     James R. Denlea
>                     Jeffrey I. Carton
>                     Steven R. Schoenfeld
>
>                     2 Westchester Park Drive, Suite 410
>                     White Plains, New York 10604
>                     Tel.: (914) 331-0100
>                     Fax: (914) 331-0105
>                     jdenlea@denleacarton.com
>                     jcarton@denleacarton.com
>                     sschoenfeld@denleacarton.com
>
>                     *Attorneys for Plaintiff*